DOUGLAS FELDE *et al.*, Plaintiffs-Appellees, v. CHRYSLER CREDIT CORPORATION, Defendant-Appellant.

Second District   No. 2—90—1096

Opinion filed October 25, 1991.

David G. Duggan, of Abramson & Fox, and Maurice J. McCarthy, both of Chicago (James W. Fessler, of counsel), for appellant.

Norman H. Lehrer and R. Lawrence Canavan, both of Lehrer, Flaherty & Canavan, of Wheaton (Maureen H. Flaherty, of counsel), for appellees.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Chrysler Credit Corporation (CCC), appeals from a judgment of the circuit court of Du Page County ordering rescission of a retail installment sales contract for the purchase of an automobile signed by plaintiffs, Douglas and Gina Felde, and return to the Feldes of the $3,000 they had paid pursuant to the contract. CCC makes the following contentions on appeal: (1) that the Feldes had no right of action against CCC for alleged breaches of warranty by the automobile manufacturer and seller; (2) that the claim against CCC was barred under the doctrine of *res judicata* because of an order dismissing claims against other defendants pursuant to a settlement agreement; (3) that permitting the action against CCC to continue after the settlement resulted in multiple recovery; and (4) that the trial court failed in awarding damages to offset the benefits received by Gina in using the automobile.

The Feldes' second amended complaint was directed against defendants, Chrysler Corporation, Schaumburg Dodge, Elmhurst Dodge, and CCC. In count I, plaintiffs alleged that they purchased an automobile manufactured by Chrysler Corporation from Schaumburg Dodge on September 4, 1986. In connection with this purchase, the above two defendants provided plaintiffs with written warranties stating the car was free of all defects in materials and workmanship, and, if any such defects were discovered within a specified amount of time or mileage driven, these two defendants would repair or replace the car at no cost to plaintiffs.

According to count I, these defendants breached the warranties because of defects which caused the car to intermittently surge forward and accelerate uncontrollably and the failure of these defendants to fix this problem although plaintiffs brought the car in for repairs on several occasions. These defects substantially impaired the value of the car to plaintiffs. Plaintiffs sought to have the contract "cancelled and revoked," and they sought damages. They also sought attorney fees pursuant to the Magnuson-Moss Warranty Act (15 U.S.C. §2301 et seq. (1982)).

In count II, plaintiffs realleged the above facts and asserted that Chrysler Corporation and Schaumburg Dodge breached the implied warranty of merchantability set forth in section 2—314 of the Uniform Commercial Code (Ill. Rev. Stat. 1989, ch. 26, par. 2—314). Plaintiffs sought the same relief they requested in count I.

Count III was directed against CCC and was the only count directed against it. Plaintiffs entitled this count "Revocation of Retail Installment [sic] against Assignee Pursuant to Federal Regulation 16 C.F.R. Sec. 433.2." In count III, plaintiffs realleged the facts alleged in the prior counts. They alleged further that, at the time they purchased the car, they signed a retail installment sales contract which was subsequently assigned to CCC. As required by the regulation codified at 16 C.F.R. §433.2 (1991), the contract stated:

> "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof."

Plaintiffs additionally alleged in count III that the various breaches of warranty previously alleged constituted defenses and claims against the seller. They prayed for cancellation and revocation of the retail installment sales contract, return of all sums they had paid to CCC under the contract, and costs and attorney fees.

In count IV, plaintiffs alleged negligent repair on the part of Chrysler Corporation, Schaumburg Dodge, and Elmhurst Dodge. Plaintiffs stated in this count that they brought the car to Schaumburg Dodge and Elmhurst Dodge on numerous occasions in 1986 and 1987, but those defendants negligently failed to repair the defects. As a result of their negligence, on September 11, 1987, the Felde car accelerated uncontrollably and crashed into another car resulting in injuries to Gina. They sought damages in this count for those injuries and for damage to the car.

Each of the defendants, with the exception of CCC, entered into settlement agreements with plaintiffs. Pursuant to those agreements,

plaintiffs received a total of $33,000 from these defendants. On August 29, 1990, the trial court entered an order approving plaintiffs' settlement against Chrysler Corporation and Elmhurst Dodge and dismissing the claims against these defendants with prejudice. Six days later, the court approved the settlement with Schaumburg Dodge and entered an order dismissing the claims against said defendant.

On September 4, 1990, the date of trial, CCC presented a motion to dismiss the action pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619). CCC argued in the motion, *inter alia*, that under the doctrine of *res judicata* the dismissal of plaintiffs' claims against the other defendants barred the claim against CCC. The trial court took the motion under advisement, and the trial commenced.

Plaintiff Gina Moser, formerly known as Gina Felde, testified that on September 4, 1986, she and her ex-husband purchased a 1986 Dodge Daytona automobile from the Schaumburg Dodge dealership. She signed a retail installment sales contract which provided that she would make 48 monthly payments of $250, and that the contract would be assigned to CCC. Gina received the standard seven-year or 70,000-mile written warranty which Chrysler was offering that year.

According to Gina, during the third week she owned the car, she noticed it would sometimes surge forward and accelerate by itself. This could happen any time the speed of the car was between 5 and 60 miles per hour. She took the car to Schaumburg Dodge for repairs that week, and they replaced the throttle sensor. The problem recurred, however, and Gina did not feel safe driving the car. She took it to Schaumburg Dodge two or three more times, but they were unable to correct the problem.

Gina then began taking the car to Elmhurst Dodge for repairs. She took it there five times because of the same problem, and they replaced the throttle sensor three times. The sudden acceleration problem continued to recur, however. On September 11, 1987, Gina was involved in an accident while driving the car. The accident occurred after Gina stopped behind a truck at a traffic signal. After the light turned green, she took her foot off the brake, and the car lurched forward, hitting the truck. Gina had not placed her foot on the accelerator when this happened.

After the accident, Gina had the car towed to Schaumburg Dodge. The manager of Schaumburg Dodge called Gina the next day and stated that she would be charged a daily fee for storage. She told the manager that, as far as she was concerned, they could keep the car. Gina had not seen the car since that date. She no longer had the writ-

ten warranty that had been given to her when she bought the car because the warranty was in the glove compartment when the car was left at the dealership.

When asked on cross-examination whether the $250 monthly payment for the car was a fair amount, Gina testified that it was for the first month but not thereafter. Gina further testified that she was currently leasing a Mazda automobile for $265.88 per month.

Gordon McDowell testified that he is the service manager for Schaumburg Dodge. He had also worked for Chrysler Corporation between 1978 and 1985 as a service training instructor and a district manager. McDowell trained mechanics that worked at various Chrysler dealerships. He stated that Chrysler performs its warranty repair through franchise dealerships such as Schaumburg Dodge and Elmhurst Dodge.

McDowell reviewed the repair records from the two dealerships for the Felde car but did not examine the vehicle itself. In his opinion, the car had a high idle condition which could have exhibited itself in an erratic fashion. This problem was caused by a defective throttle position sensor, defects in the wiring between the throttle position sensor and the car's computer or an automatic idle speed motor. McDowell's review of the records revealed that the throttle position sensor was replaced three times on the Felde car.

McDowell was the supervisor of the mechanics who worked on the Felde car. He testified that the car had warranty coverage for the power train and emissions at the time of the accident. The warranty covered all components that may have caused the high idle condition. McDowell felt that the car was safe to drive and the accident was caused by driver error. Nevertheless, on those occasions where the car was brought in for repairs, he would not have released it to the customer because the high idle problem was not repaired.

James Switalski, a certified mechanic who once taught automotive technology courses at a community college, testified for plaintiffs. Switalski examined repair records for the car and also looked at the car one time in October 1987, although he was unable to open the hood because of damage from the accident. Switalski tried to start the car but it would not start.

In Switalski's opinion, the car had a problem with sudden acceleration which was likely due to a faulty fuel delivery system. Switalski was not sure which component of the car had caused the problem. He felt the problem was erratic and it was a recurring problem. In Switalski's opinion, the car was not repaired properly, and it was not safe to drive.

The trial judge, hearing the case without a jury, entered a judgment order rescinding the retail installment sales contract and awarding $3,000 to plaintiffs. CCC now appeals from that judgment order.

■ The Federal regulation codified at 16 C.F.R. §433.2 (1991) provides that it is an unfair or deceptive act or practice under the Federal Trade Commission Act (15 U.S.C. §41 *et seq.* (1982)) in connection with any sale or lease of goods or services to consumers, in or affecting commerce to take or receive a consumer credit contract or accept as full or partial payment for the sale or lease the proceeds of any purchase money loan unless the consumer credit contract involved contains the following notice in bold face 10-point type:

> "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."

(16 C.F.R. §433.2 (1991).)

The retail installment sales contract signed by the Feldes and assigned to CCC contained the above notice.

In arguing that the Feldes did not have a cause of action against it under the circumstances of this case, CCC emphasizes an FTC interpretation stating that the above regulation "does not create new rights or defenses." (41 Fed. Reg. at 20023-34 (1976).) Prior to the adoption of the rule, a creditor in CCC's position could avail itself of the holder-in-due-course principle (see Ill. Rev. Stat. 1989, ch. 26, par. 3—302) and demand payment by the consumer despite misrepresentation, breach of warranty or contract, or even fraud on the seller's part. (*Ford Motor Credit Co. v. Morgan* (1989), 404 Mass. 537, 541, 536 N.E.2d 587, 589.) The rule was designed to preserve the consumer's claims and defenses and restore the right of nonpayment to the consumer by eliminating the creditor's holder-in-due-course status. *Morgan,* 404 Mass. at 541, 536 N.E.2d at 589.

In promulgating the regulation codified at 16 C.F.R. §433.2 (1991), the FTC also intended to permit the consumer to maintain an action against the assignee-creditor for a refund of all money paid on account. (404 Mass. at 541, 536 N.E.2d at 589; 40 Fed. Reg. at 53524 (1975).) Such relief was only intended to be available if the seller's breach was so substantial that rescission and restitution were justified under applicable State law principles. (404 Mass. at 542, 536 N.E.2d at 589; *Eachen v. Scott Housing Systems, Inc.* (M.D. Ala. 1986), 630

F. Supp. 162, 165; 40 Fed. Reg. at 53524 (1975).) The FTC stated in regard to the regulation that consumers "will not be in a position to obtain an affirmative recovery from a creditor unless they have actually commenced payments and received little or nothing of value from the seller." 40 Fed. Reg. at 53527 (1975).

Thus, as CCC asserts, the regulation does not create new claims or defenses. It does, however, enable the consumer to assert defenses and, in some instances, claims against an assignee-creditor which could previously have only been asserted against a seller. While CCC contends that the rule was not intended to permit consumers to assert breach of warranty claims against the assignee-creditor, this argument lacks merit. Under the principles set forth in the preceding paragraph, the consumer could successfully maintain an action against an assignee-creditor for any sums paid on account if a breach of warranty on the seller's part was sufficiently egregious to warrant rescission of the sales contract under the applicable State law.

CCC also argues that, even if recovery against the assignee is justified under some circumstances for breach of the seller's warranty, such recovery was improper in this case because plaintiffs never introduced any written warranty into evidence. As we have seen, Gina testified that the written warranty was in the glove compartment of the car when she had it towed to the dealership after the accident and told the manager they could keep it.

In support of this contention, CCC cites *Lytle v. Roto Lincoln Mercury & Subaru, Inc.* (1988), 167 Ill. App. 3d 508, for the proposition that a document titled "New Vehicle Preparation" which Schaumburg Dodge gave to the Feldes and which specified certain things that had been done in inspecting and testing the car on the date of the sale did not constitute a written warranty. In *Lytle*, this court held that a similar form entitled "New Car Get Ready" did not constitute a written warranty under the Magnuson-Moss Warranty Act (15 U.S.C. §2301 *et seq.* (1982)). (*Lytle*, 167 Ill. App. 3d at 516.) This meant that the Magnuson-Moss provision invalidating disclaimers of the implied warranty of merchantability set forth in section 2—314 of the Uniform Commercial Code (Ill. Rev. Stat. 1989, ch. 26, par. 2—314) if the seller issues a written warranty to the consumer concerning the product (see 15 U.S.C. §2308 (1982)) did not apply. See *Lytle*, 167 Ill. App. 3d at 516-17. This court also held that the evidence failed to show that the seller adopted the manufacturer's written warranty. 167 Ill. App. 3d at 514-15.

In the case at bar, unlike *Lytle*, however, there was ample evidence that Chrysler had issued a written warranty to plaintiffs and

that Schaumburg Dodge adopted the warranty. Gina testified that she received the standard seven-year or 70,000-mile written warranty for the car that Chrysler was offering in 1986. Gordon McDowell testified that, at the time of the accident involving the Felde car, it was covered by a warranty which covered repairs to all portions of the vehicle which could have caused the car's defective condition. The work orders from Schaumburg and Elmhurst Dodge for repairs to the car were introduced into evidence; none showed any charge for the repairs, and the ones from Elmhurst Dodge were captioned "Warranty Repair Order."

■ Additionally, the dealer invoice given to the Feldes by Schaumburg Dodge states that no warranties have been made by the dealer or manufacturer "excepting only Chrysler Corporation's current printed warranty applicable to such vehicle or vehicle chassis which warranty is incorporated herein and made a part hereof and a copy of which will be delivered to buyer at the time of delivery of the new motor vehicle or motor vehicle chassis." Therefore, the evidence clearly established the existence of a written warranty issued to the Feldes by Chrysler Corporation for repairs at no cost for any defective parts in the power train. The evidence further established that Schaumburg Dodge adopted the Chrysler warranty since it was explicitly incorporated into the dealer invoice which set forth the conditions of the sale. Therefore, under section 2308 of the Magnuson-Moss Warranty Act (15 U.S.C. §2308 (1982)), Schaumburg-Dodge's disclaimer of the implied warranty of merchantability was invalid. That warranty, which requires among other things that the goods "are fit for the ordinary purposes for which such goods are used," was therefore implied in the sales contract in this case. Ill. Rev. Stat. 1989, ch. 26, par. 2—314(2)(c).

■ We must next consider whether the breaches of warranty in this case were egregious enough to justify rescission under Illinois law. CCC asserts that this issue need not be considered because plaintiffs did not seek rescission in the complaint. We disagree. CCC emphasizes that the caption of count III, the only count directed against it, specifies that relief is sought pursuant to the regulation codified at 16 C.F.R. §433.2 (1991). However, the relief mentioned in the caption is revocation of the retail installment contract, and, toward the end of the count, plaintiffs request that this contract be "judicially cancelled and revoked" and that plaintiffs receive a judgment for all sums paid to CCC under the contract. Count III therefore states a claim for rescission of the contract and clearly placed CCC on notice that plaintiffs were seeking such relief.

■ It is well established that a party may seek rescission of a contract if there has been substantial nonperformance or a substantial breach by another party. (*Eager v. Berke* (1957), 11 Ill. 2d 50, 54; *Farmer v. Koen* (1989), 187 Ill. App. 3d 47, 50.) The test to be employed in making this determination is "whether *** the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it." (*Trapkus v. Edstrom's, Inc.* (1986), 140 Ill. App. 3d 720, 725.) The trial court's decision on a claim for rescission will not be disturbed upon review absent an abuse of discretion. *Farmer*, 187 Ill. App. 3d at 50.

■ The evidence at trial established that Chrysler breached its express warranty to keep the power train of the Felde vehicle in good repair through the failure of the dealerships to repair the car's sudden acceleration problem. Additionally, the evidence supported a conclusion that Chrysler breached the implied warranty of merchantability (Ill. Rev. Stat. 1989, ch. 26, par. 2—314) in light of Switalski's testimony that the car was unsafe to drive which would indicate it was not fit for the ordinary purpose for which an automobile is used (see Ill. Rev. Stat. 1989, ch. 26, par. 2—314(2)(c)). Applying the test set forth in *Trapkus*, the trial court could have concluded reasonably that the Feldes would not have contracted to purchase the car had they known of the sudden acceleration problem and that the Chrysler dealerships would be unable to repair it. Indeed, it would seem few consumers would be willing to purchase a car with such a defect in light of the possibility that it could cause an accident by unexpectedly accelerating. Accordingly, the trial court's decision to rescind the retail installment sales contract was not an abuse of discretion.

■ CCC also maintains in its reply brief that rescission is not a proper remedy for breach of warranty under section 2—714 of the Uniform Commercial Code. That provision states in part as follows:

"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Ill. Rev. Stat. 1989, ch. 26, par. 2—714(2).

The drafters of the Uniform Commercial Code clearly intended that it would be supplemented by common-law principles. (Ill. Rev. Stat. 1989, ch. 26, par. 1—103; *Spec-Cast, Inc. v. First National Bank & Trust Co.* (1989), 128 Ill. 2d 167, 173.) Section 1—103 specifically states that, "[u]nless displaced by the particular provisions of this

Act, the principles of law and equity *** shall supplement its provisions." (Ill. Rev. Stat. 1989, ch. 26, par. 1—103.) Since section 2—714 contains no language precluding buyers from seeking the remedy of rescission in appropriate instances due to breaches of warranty, we reject CCC's contention.

CCC also contends that the damage award to it results in a multiple recovery to the Feldes in light of the $33,000 they received from settlements with the other defendants. Since the purpose of compensatory damages is to compensate the plaintiff rather than to award the plaintiff a windfall, it has long been recognized that plaintiff is entitled to only one satisfaction for an injury. (*McLane v. Russell* (1989), 131 Ill. 2d 509, 523.) In *McLane*, the court held it was proper for the trial court to set off a portion of a settlement with a different defendant to avoid potential excess recovery for the same injury, loss of an undivided one-half interest in a farm. 131 Ill. 2d at 524.

The court in *McLane* distinguished the case from *Clear-Vu Packaging, Inc. v. National Union Fire Insurance Co.* (1982), 105 Ill. App. 3d 671. In *Clear-Vu*, this court held that the settlement proceeds recovered from one defendant should not be set off against recovery from the remaining defendant when the two defendants were not liable for a single indivisible injury to plaintiff; rather, there were distinct losses. *Clear-Vu*, 105 Ill. App. 3d at 675-76.

In the case at bar, plaintiffs' recovery from CCC did arise from the breaches of warranty by the seller and manufacturer. However, we note that plaintiffs were only entitled to a return of the sums already paid under the retail installment sales contract with regard to their rescission claim against CCC. In the breach of warranty counts against Chrysler Corporation and Schaumburg Dodge, plaintiffs sought relief that they could not possibly have obtained against CCC including attorney fees under the Magnuson-Moss Act (15 U.S.C. §2310(d)(2) (1982)) and consequential damages. Additionally, in count IV, Gina sought personal-injury damages for injuries suffered in the September 1987 accident as a result of the other defendants' negligent failure to repair her car. Clearly, this was a separate and distinct injury from that for which plaintiffs sought relief against CCC.

Thus, it is clear that there were separate and distinct damage claims brought against the other defendants and that no recovery could have been sought on these claims against CCC. The record does not reveal any apportionment of the settlement amount among the various claims. Therefore, CCC cannot establish that plaintiffs received an excess recovery and its argument must therefore be rejected.

■ CCC also complains that, in light of the Feldes' substantial recovery ($36,000), they must have improperly received damages for economic loss in violation of the doctrine set forth in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69. The *Moorman* doctrine, however, only bars such damages in tort actions. (*Moorman*, 91 Ill. 2d at 88.) The claim we are considering in this case is clearly a contract claim. CCC's argument is therefore meritless.

CCC next contends that plaintiffs' claim against it was barred under the doctrine of *res judicata* because of the orders dismissing the claims against the other defendants following the settlements. The doctrine of *res judicata* provides that a final judgment by a court of competent jurisdiction acts as an absolute bar to relitigation of the identical cause of action between the same parties or their privies. (*Harmon v. Ladar Corp.* (1990), 200 Ill. App. 3d 79, 83.) The doctrine only applies if the judgment in question was a final judgment on the merits. *People v. Kidd* (1947), 398 Ill. 405, 408-09.

■ Causes of action will be considered the same for purposes of *res judicata* if the underlying facts and the relief sought are substantially the same. (*Knodle v. Jeffrey* (1989), 189 Ill. App. 3d 877, 886.) The relief sought from CCC was quite different from the relief sought from the other defendants. As we have seen, the only relief sought from CCC was cancellation of the retail installment sales contract and return of the payments made pursuant to it. Gina sought to recover from the other defendants for damage to her car and personal injury to herself. She also sought attorney fees. Because the relief sought from CCC was distinct from the relief sought from the other defendants, *res judicata* does not apply.

Additionally, one of the primary purposes of *res judicata* is to promote judicial economy by requiring parties to litigate in one lawsuit all rights arising from the same set of operative facts. (*Knodle*, 189 Ill. App. 3d at 885.) Gina did this by raising her claim against CCC in the same complaint in which her claims against the other defendants were brought. To hold that a dismissal with prejudice of some defendants in a lawsuit pursuant to a settlement agreement could operate as a bar of further proceedings in the same lawsuit against a nonsettling defendant would not advance the above purpose. Such a holding would also be contrary to the Illinois public policy of encouraging settlements. (See *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.* (1990), 196 Ill. App. 3d 5, 22.) *Res judicata* is also inapplicable for this reason.

■ Finally, CCC argues that the circuit court failed to apply the proper measure of damages and did not take into account the benefits

received by the Feldes. In general, rescission means the cancellation of a contract and restoration of the parties to their initial status. (*Puskar v. Hughes* (1989), 179 Ill. App. 3d 522, 528.) This requires not only a return of any consideration received by the rescinding party but a setoff for any benefits received by the rescinding party because of the contract. *Puskar*, 179 Ill. App. 3d at 528-29.

Here, CCC received no such setoff, even though the evidence shows the Feldes put approximately 13,000 miles on the car. The trial court could have concluded reasonably from the evidence that an automobile in such an unsafe condition and which constantly had to be taken in for repair had little value to the Feldes. However, Gina admitted on cross-examination that her $250 monthly payment for the car was a fair amount for the first month she owned it but not thereafter. Pursuant to our authority under Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)) to enter any judgment that should have been made, we reduce the judgment amount by $250 to $2,750 and affirm the judgment as modified.

For the above reasons, the judgment of the circuit court of Du Page County is affirmed as modified.

Affirmed as modified.

WOODWARD and BOWMAN, JJ., concur.