Charles W. TERRELL and Karen Terrell, Plaintiffs,

v.

John H. CHILDERS, Michael J. Childers, Frank Schuette, Jr. and Talent Services, Inc., an Illinois corporation, Defendants.

No. 93 C 2460.

United States District Court, N.D. Illinois, E.D.

April 23, 1993.

Gary Lee Starkman, Brian Alan Sher, Ross & Hardies, P.C., Chicago, IL, for plaintiffs.

Robert K. Blain, Law Offices of Robert K. Blain, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Charles and Karen Terrell bring this eight count action against their financial advisers, alleging breach of contract, breach of fiduciary duty, fraud, conspiracy to commit fraud, negligent misrepresentation, declaratory judgment, RICO, and RICO conspiracy. Defendants John Childers, Michael Childers, Frank Schuette, and Talent Services, Inc. have moved to dismiss the complaint in its entirety. For the reasons set forth below, we deny defendants' motion to dismiss.

### I. Motion to Dismiss Standard

A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *see also Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir.1988); *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take the "well-pleaded allegations of the complaint as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.,* 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth* ).

### II. Background

Plaintiffs Charles W. Terrell ("Walt") and Karen Terrell are citizens of Kentucky. Walt Terrell has been a professional baseball player since 1980, and neither he nor his wife has any training or expertise in finance or investments. Defendant Talent Services, Inc. ("TSI") is an Illinois corporation which represents professional athletes, providing them with investment and tax advice, as well as general business management. Defendants John H. Childers, Michael J. Childers, and Frank Schuette, Jr. are citizens of Illinois and officers of TSI.

According to the complaint, defendants first approached Walt Terrell during the 1985 baseball season, when Walt was with the Detroit Tigers. Michael Childers informed Walt that John Childers and he, through TSI, had considerable experience in providing professional athletes with financial advice. He also noted that TSI's primary goal was to insure that its clients were financially secure after their careers were over, and that he could provide that service for Walt and Karen. In subsequent phone calls, Michael Childers continued to assert that TSI could successfully manage all of Walt's family's financial affairs.

In response to these representations, Walt entered into a Business Management Agreement with TSI in December, 1985, which essentially provided that TSI would undertake the management of the Terrells' finances. Under the agreement, TSI agreed to use "persons legally qualified to render the services," and specifically agreed to provide:

(a) General Bookkeeping services;

(b) Advice and programming with respect to your budget, including the preparation of cash flow projections and an annual management report;

(c) Advice and programming with respect to taxes and tax planning, including preparation of annual tax returns;

(d) The payment of some or all of your expenses from funds supplied by you for that purpose;

(e) Insurance and estate planning consultation;

(f) Such other advice and programming as may be deemed advisable by TSI to maintain records and provide the management of your business and financial affairs contemplated by this agreement.

In return, the Terrells paid TSI an annual fee of five percent of Walt's annual income, which the defendants collected by writing checks to TSI on the Terrells' checkbook. The Terrells also provided the defendants with all of the information they possessed regarding their finances, and had Walt's salary and the family bills forwarded directly to TSI.

According to the complaint, for the next six years, defendants lulled the Terrells into a false sense of security regarding their financial affairs by representing their financial situation as "fantastic," "super," and variations thereof. The Terrells contend that, in fact, the defendants had invested their money in high risk ventures, while misrepresenting the nature of the investments to the Terrells. They point to several different investments over the course of TSI's representation of Walt which collectively form the basis for the present complaint.

### A. The Pine Street Transaction

In the mid–1980s, John and Michael Childers and TSI created an Illinois general partnership called 2134 Pine Street Associates to purchase a historic property located at that address in Philadelphia for investment purposes. In late 1985, Michael Childers contacted Walt and encouraged him to invest in the partnership. Childers informed Walt that the investment would be highly profitable, risk free, and provide a large tax write-off. He also stated that Walt's sole risk would be a one-time payment of $15,000, since the investment would be structured as a limited partnership.

Over the course of the next year, Walt signed a signature page that was subsequently attached to a "partnership agreement," as well as two powers of attorney which allowed TSI to obtain two mortgages covering the property. The partnership subsequently purchased the property, and John Childers assigned mortgages in one of the six condominium units to the various investors, who included Walt, other professional athletes who were clients of TSI, and himself. Walt was assigned a 55% share in one unit on the property.

Contrary to the defendants' assertions, however, 2134 Pine Street Associations was actually a general partnership, and Walt was therefore exposed to significantly higher liability than the Childers represented. In addition, the complaint alleges that John Childers failed to inform the Terrells that he was entitled to a $31,500 commission for arranging the transaction. Finally, the Terrells assert that the defendants continued to mislead them as to the status of the Pine Street investment. For example, on numerous occasions, Mike Childers and Schuette informed the Terrells that the investment was profitable and doing "fine," when in fact the property operated poorly and required monthly cash infusions.

In addition, beginning in January 1988, Mike Childers and Schuette represented to Walt that some of the other Pine Street investors were temporarily unable to make their payments, and advised Walt to extend "one-time" loans to cover their obligations. Childers and Schuette asserted that such loans would be a good investment, and that TSI would guarantee them in the event of default. Accordingly, Walt signed loan agreements and notes in favor of two of his fellow investors. Although Childers and Schuette continued to assert that these loans were "one-time" transactions, the investors were apparently unable to repay Walt. In addition, according to the complaint, defendants used the Terrells' checkbook, over which they had control, to unilaterally book loans to other investors, despite the fact that these individuals would apparently be unable to repay these loans.

In late 1991, Walt hired an accounting firm to investigate his financial holdings. The investigation uncovered the above information regarding John Childers' commission, the loans, and the unprofitability of the property. In addition, the firm appraised the value of the Pine Street property at less than half of the unpaid mortgage balance.

### B. Strata Energy

In late 1988, Schuette contacted Walt and encouraged him to invest in Strata Energy Resources Diversified Oil and Gas Fund 1988–III, a California limited partnership. Schuette maintained that the investment offered Walt a chance to make some money and get a tax write-off, and that it might be somewhat risky, but looked "real, real good." Walt invested a total of $49,685 in Strata Energy, but has only obtained $4,891 in tax saving. In addition, there is currently no market for Walt's investment in Strata Energy.

### C. Annuities

In 1989, Michael Childers advised Walt to invest in TSI-recommended annuities to provide for the Terrells' financial future. With respect to these annuities, Childers specifically represented that: (1) by 1995, the annuities would provide the Terrells with an annual income of at least $200,000 for life; and (2) the Terrells could withdraw the annuities at any time without incurring any penalty or charge. The Terrells agreed to purchase the annuity, and Michael Childers and TSI made the necessary arrangements, regularly contributing funds to a single fixed annuity purchased from Manufacturers' Life Insurance Company. According to the complaint, contrary to TSI's representations, the Terrells will incur substantial income taxes on excess interest, a penalty of ten percent on any amount withdrawn before Walt reaches age 59½, and significant surrender charges if the withdrawals occur within ten years of each contribution.

### D. Income Tax Overpayments

Finally, the Terrells assert that defendants were responsible for overpayment of the Terrells' income tax payments. Defendants retained responsibility for the Terrells' tax payments, and in the course of their representation, obtained numerous extensions for filing the Terrells' income tax returns, incurring substantial penalties and interest obligations. In addition, defendants failed to correct the rate at which the taxes were withheld, thus resulting in substantial overpayment of taxes throughout the year, followed by a substantial refund. Although the Terrells were deprived of the time value of the money that was overpaid, which totalled $180,000 over six years, Michael Childers and Schuette repeatedly asserted that this system of obtaining refunds due to overpayment of income taxes constituted "excellent" money management.

Based upon the above actions, the Terrells filed this lawsuit, claiming breach of contract, breach of fiduciary duty, common law fraud, conspiracy to commit fraud, negligent misrepresentation (in the alternative), declaratory judgment for indemnity, RICO, and RICO conspiracy. They seek damages arising out of the above transactions, including treble damages and attorneys' fees under the RICO counts.

### III. Discussion

Defendants have set forth numerous arguments as to why the entire complaint, or individual counts thereof, should be dismissed. Each shall be considered in turn.

### A. Damages

■ Defendants contend that the entire complaint should be dismissed because the Terrells have failed to allege that they have suffered any damages as a result of defendants' actions.[1] We initially note that the Terrells' prayer for relief is, in part, faulty. For example, they request both "benefit of the bargain" damages (i.e., the difference between the value of plaintiffs' estate and that which would have been generated by competent investment advice) and "restitution" damages (i.e., return of the fees paid to TSI under the Business Management Agreement). However, a prevailing plaintiff can not get both the benefit of the bargain and simultaneously seek to retrieve its consideration for that bargain. This would allow plaintiffs a windfall, and such a result is disfavored under the law. See, e.g., Wandere v. Plainfield Carton Corp., 40 Ill.App.3d 552, 351 N.E.2d 630, 635 (1976).

We also note that it is not clear that "benefit of the bargain" damages are available here. As defendants note, the Terrells continue to hold all of the investments at issue here. Because the Terrells have not yet sold any of the investments, it is not clear that they will actually incur a loss upon sale. Although the Terrells seek the difference in the value of their estate and the value the estate would have had if the funds had been competently invested, they have failed to cite a single case where benefit of the bargain

---

1. We note with some irony that defendants seem to want the best of both worlds. While they assert that the Terrells' lawsuit is premature, claiming that no present damages exist, they also assert that some of the claims are stale, as the relevant statutes of limitations have passed. However, defendants will neither have their cake nor eat it. As discussed below, we reject both of defendants' claims.

damages were available to a plaintiff who had not yet sold the investments at issue.

■ This failing, however, is not fatal, since "benefit of the bargain" is not the only means of measuring damages. Rather, rescission and restitution are commonly available remedies in cases involving claims such as this. For example, in breach of contract cases, where there has been a substantial breach or where the contract itself was secured by fraud, the contract can be rescinded, and the parties restored to their original status through restitution. *See, e.g., Felde v. Chrysler Credit Corp.*, 219 Ill.App.3d 530, 162 Ill.Dec. 565, 571–575, 580 N.E.2d 191, 197–200 (1991), *appeal denied,* 143 Ill.2d 637, 167 Ill.Dec. 398, 587 N.E.2d 1013 (1992). The same is true in actions for breach of fiduciary duty and common law fraud:

> [T]he measure of damages for breach of fiduciary duty, like that in an action for fraud, entitles the purchaser to recover the purchase price. It is well settled that transactions of parties standing in a fiduciary relationship will be set aside where reasonable suspicion exists that the confidence has been abused.

*GNP Commodities, Inc. v. Walsh Heffernan Co.*, 95 Ill.App.3d 966, 51 Ill.Dec. 245, 248, 420 N.E.2d 659, 672 (1981). Finally, damages in a RICO action can also be measured by the amount invested as a result of the defendants' fraud. *See, e.g., Fleischhauer v. Feltner,* 879 F.2d 1290, 1300 (6th Cir.1989), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 611 (1990). Here, the Terrells have included in their prayer for relief "[a]ll fees paid by plaintiffs to TSI under the Business Management Agreement." They have also requested return of some of their funds which they claim were improperly distributed. It is therefore clear that the plaintiffs have alleged measurable damages arising out of defendants' allegedly fraudulent conduct. Whether they can ultimately prove that they are entitled to damages, and then prove up those damages, is an issue for another day. For the present motion, however, it is suffi-

cient that they have asserted legally cognizable damages. Accordingly, we deny defendants' motion to dismiss the complaint for failure to allege damages.[2]

### B. Karen Terrell as Proper Plaintiff

Defendants next argue that all counts of the complaint should be dismissed as to Karen Terrell. They note that she was not a party to the Business Management Agreement, nor is she listed as an investor in any of the properties at issue in this lawsuit. Accordingly, defendants argue that Karen Terrell lacks standing to maintain the present action. The Terrells respond that Karen is a third-party beneficiary of the contract, and is therefore entitled to sue for its breach.

■ The seminal authority on third-party beneficiaries in Illinois is *Carson Pirie Scott & Co. v. Parrett,* 346 Ill. 252, 178 N.E. 498 (1931). There, the Supreme Court of Illinois stated:

> The rule is settled in this state that, if a contract be entered into for a direct benefit of a third person not a party thereto, such third party may sue for breach thereof. The test is whether the benefit to the third person is direct to him arising from the contract. If direct, he may sue on the contract, if incidental he has no right of recovery thereon.

*Carson Pirie Scott,* 178 N.E. at 501. The Court added that such a determination "depend[s] upon the intention of the parties as that intention is to be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution." *Id.; accord Altevogt v. Brinkoetter,* 85 Ill.2d 44, 51 Ill.Dec. 674, 679, 421 N.E.2d 182, 187 (1981). Furthermore, although parties are presumed to be contracting solely for their own benefit, a contract need not actually name a third-party beneficiary; rather, the court is to look at the contract *and* the attendant circumstances to determine whether the parties intended to benefit the third-party. *Stamp v. Inamed Corp.,* 777 F.Supp. 623, 625 (N.D.Ill.1991).

---

2. As noted above, however, the Terrells' damage request is not perfect. We therefore grant leave to amend so that plaintiffs can select their theory of damages and set forth an appropriate prayer for relief, eliminating those "damages" that are not available, or not measurable, under the selected remedy.

We find that the contract and its subject matter, as well as the circumstances surrounding its execution, support an inference that the parties intended to confer a direct benefit upon Karen Terrell. In the contract itself, TSI agrees to provide general bookkeeping service, budget advice and programming, tax advice and planning, including the preparation of tax returns, the payment of some or all expenses, and insurance and estate planning consultation. Each of these areas almost invariably involves and directly affects a spouse, thus supporting the inference that a contract such as this was entered into with the contemplation and intent that the spouse would directly benefit from it.[3]

In addition, the circumstances surrounding formation of the contract further support the plaintiffs' assertions. According to the complaint, in encouraging Walt Terrell to enter the agreement with TSI, Mike Childers repeatedly stressed that TSI could provide financial security for Walt *and Karen,* and would manage *their* finances and investments. Accordingly, the Terrells provided TSI with all information relating to their *family* finances and budget, forwarded the *family* bills to TSI for payment, and arranged for TSI to prepare their *joint* income tax returns. Given the personal family nature of the arrangement, as well as the alleged representations of Mike Childers, it is possible that the Terrells can prove, as they allege, that TSI intended to impart direct benefits on Karen Terrell, thus making her a third-party beneficiary to the contract. Accordingly, we deny defendants' motion to dismiss all counts of the complaint as to Karen Terrell.

## C. Statute of Limitations

Defendants seek to have Count II (breach of fiduciary duty), Count III (common law fraud), and Count V (negligent misrepresentation) dismissed to the extent they arise out of Walt Terrell's investment in 2134 Pine Street, asserting that these claims are barred by the applicable statutes of limitations. The statute of limitations on claims of breach of fiduciary duty is five years. *See Mitchell v. Simms,* 79 Ill.App.3d 215, 34 Ill. Dec. 536, 398 N.E.2d 211, 215 (1979). This limitations period begins to run when the plaintiff "discovers or reasonably should have discovered the breach of fiduciary duty." *Id.* The same statute of limitations period is applicable to actions for common law fraud and negligent misrepresentation, and begins to run when the plaintiff knows or should have known of the injury, and that the injury was wrongfully caused. *Knox College v. Celotex Corp.,* 88 Ill.2d 407, 58 Ill.Dec. 725, 729, 430 N.E.2d 976, 980 (1981).

Defendants assert that the statute of limitations should have run with respect to the Pine Street property no later than January, 1988, when Mike Childers and Schuette informed Walt Terrell that some of the other investors in the property were unable to make their payments, and recommended that Terrell extend a "one-time" loan to these persons to cover their obligations. Defendants claim that Terrell should have known that his fellow investors would be permanently unable to make repayment, and therefore should have known of the defendants' wrongful behavior at that time. We disagree.

The complaint alleges that at the time Childers and Schuette encouraged Terrell to make the loans, they also represented that TSI would repay the loans at a favorable rate of interest in the event the borrowers defaulted. Accordingly, Terrell had no basis to suspect wrongdoing until June, 1991, when Jack Childers recommended to Terrell that he write off the loans as a tax loss. At that time, Terrell hired an outside accountant to review his financial situation, and thereafter became aware of defendants' allegedly wrongful behavior. As a result, taking all inferences in the Terrells' favor, the statue of limitations did not begin to run until June, 1991. Because the complaint was filed on April 23, 1993, well within the five year limitations period, we deny defendants' motion to

---

**3.** This case is thus distinguishable from *Serpe v. Williams,* 776 F.Supp. 1285 (N.D.Ill.1991), where the contract at issue dealt solely with the issue of one spouse's employment, and the sole benefit to the couple was that spouse's increased income. Whereas the benefit to the other spouse there was clearly incidental, the contract at issue here arguably confers direct benefits on both spouses.

dismiss Counts II, III, and V as barred by the statute of limitations.

### D. Alleging Fraud with Particularity

Defendants also seek dismissal of Count III (common law fraud) on the ground that the Terrells have failed to allege fraud with particularity. Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud ... be stated with particularity." This rule, however, must be read in conjunction with the general requirements of Rule 8(a), which states that a plaintiff need only plead a "short and plain statement of the claim showing that the pleader is entitled to relief." As a result, "a complaint is considered sufficient if it sets forth the time, place, particular contents of the false representation, the identity of the party making the misrepresentation, and the consequences of the misrepresentation." *Onesti v. Thomson McKinnon Securities, Inc.*, 619 F.Supp. 1262, 1265 (N.D.Ill.1985). However, when numerous transactions are involved, and take place over a period of time, less specificity is required. *Id.*

In the present case, the Terrells have sufficiently alleged the above elements. Throughout the entire complaint, they set forth the details of each of the alleged misrepresentations, including the party or parties making the representation, as well as the place, subject matter, and time frame thereof. Furthermore, the allegations clearly set forth facts which warrant "an inference of actual knowledge necessary for a showing of scienter." *Design Time v. Synthetic Diamond Technology*, 674 F.Supp. 1564, 1571 (N.D.Ind.1987). We therefore reject defendants' claim that Count III fails to satisfy Fed.R.Civ.P. 9(b), and deny defendants' motion to dismiss it on that basis.

### E. Alleging Agreement Between the Defendants

Defendants next argue that Counts IV (conspiracy to commit fraud) and VIII (RICO conspiracy) should be dismissed, claiming that the Terrells have failed to allege with particularity facts which demonstrate the existence of an agreement.[4] It is well established that an agreement between co-conspirators is an essential element of a conspiracy. *See, e.g., Koulouris v. Estate of Chalmers*, 790 F.Supp. 1372, 1378 (N.D.Ill. 1992). However, "[b]ecause a conspiracy is difficult to prove with direct evidence, it may be established with circumstantial evidence and legitimate inferences therefrom." *Bosak v. McDonough*, 192 Ill.App.3d 799, 139 Ill. Dec. 917, 920, 549 N.E.2d 643, 646 (1989). We find that the Terrells have alleged sufficient facts to support the inference of an agreement. The complaint sets forth various occasions on which two or more of the defendants were alleged to have acted together in defrauding the Terrells. In addition, it alleges that the defendants "combined, confederated and conspired to defraud plaintiffs." Finally, John Childers, Mike Childers, and Frank Schuette are all officers of TSI; the apparent closeness with which they worked and the extent of their individual and collective involvement in the Terrell's financial affairs clearly supports an inference of agreement. *See Carl v. Galuska*, 785 F.Supp. 1283, 1288 (N.D.Ill.1992) (close employment and agency relationship supports inference of agreement among alleged co-conspirators). Accordingly, we deny defendants' motion to dismiss Counts IV and VIII.

### F. Declaratory Judgment

The Terrells seek a declaration that they are entitled to indemnification from the

---

4. With respect to Count IV, defendants also claim that the Terrells have failed to allege that the defendants committed any unlawful acts, or legal acts by unlawful means, a necessary predicate to a conspiracy claim. *See Bosak v. McDonough*, 192 Ill.App.3d 799, 139 Ill.Dec. 917, 920, 549 N.E.2d 643, 646 (1989). As discussed above, we find that the Terrells have adequately alleged that the defendants engaged in fraudulent behavior. Accordingly, we reject defendants' challenge to the conspiracy claim based upon failure to allege unlawful acts.

Defendants, also assert in their motion that Count IV should be dismissed because it fails to allege damage apart from the alleged underlying fraudulent acts. However, they do not even mention this assertion in either of their memoranda of law; indeed, defendants have utterly failed to provide any legal support for this theory. We shall give this claim the same attention that defendants apparently do. Accordingly, it is rejected.

defendants for damages and costs resulting from any mortgage foreclosure or related litigation regarding the property at 2134 Pine Street in Philadelphia. The defendants have moved to dismiss, claiming that there is no present "actual controversy" within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201. We disagree.

It is true, as defendants argue, that no foreclosure action has been filed, and, as a result, it is unclear whether there will be any deficiency judgment ultimately entered against Walt Terrell. However, as noted in Wright & Miller:

> It is clear that in some instances a declaratory judgment is proper even though there are future contingencies that will determine whether a controversy ever actually becomes real. The familiar type of suit, in which a liability insurer seeks a declaration that it will not be liable to indemnify an insured person for any damages the injured person may recover against the insured, is an example. The injured person may not sue or he may not obtain a judgment against the insured, but there is held to be sufficient controversy between the insurer and the injured person that a declaratory judgment is permissible.

10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2757 at 586 (2d ed. 1983). *Accord Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir.1992). We are faced here with a nearly identical situation. Walt Terrell has been threatened with foreclosure, and the dates to remedy the existing default have passed. The "contingencies" existent in this case are therefore no more speculative than those contemplated in the traditional insurer indemnification declaratory judgment action, and thus do not preclude our review. Accordingly, we deny defendants' motion to dismiss the request for a declaratory judgment.

### G. Pattern of Racketeering Activity

Defendants also move to dismiss Count VII (RICO) of the complaint, arguing that the Terrells have failed to adequately allege a pattern of racketeering activity, as required by the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 *et seq.*[5] Although the statute itself provides little guidance as to what constitutes a "pattern of racketeering activity," the Supreme Court, in *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), clarified the statutory requirements. There, the Court concluded that "to prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900 (emphasis omitted). Defendants argue that the Terrells have met neither prong of this "continuity plus relationship" test. We disagree.

The relatedness element of a RICO claim is established if the defendants' conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J., Inc.*, 492 U.S. at 240, 109 S.Ct. at 2901 (quoting 18 U.S.C. § 3575(e)). The Terrells have alleged that the defendants used the mails and interstate telephone calls to defraud Walt Terrell out of 5% of his annual income, providing incompetent investment advice and making inappropriate and deceptive investments to TSI's benefit. In particular, the Terrells point to the activities of the defendants in conjunction with the Pine Street and Strata Energy investments, the annuity purchase, and the income tax overpayments. These various acts had the same purpose and result, and involved the same participants. Based upon the allegations of the complaint, the Terrells have therefore met the threshold for establishing the "relationship" element of a RICO pattern.

---

**5.** Defendants also claim that the Terrells have failed to plead Count VII with particularity, and thus have not met the requirements of Fed. R.Civ.P. 9(b), which is applicable to RICO claims. Defendants essentially repeat the assertions made with respect to Count III (common law fraud), which we rejected in Part D above. For the reasons stated there, we also reject defendants' Rule 9(b) objections to the Terrells' RICO claim.

■ They have also adequately alleged "continuity." The Court in *H.J., Inc.* set forth guidelines for showing this element:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.

*H.J., Inc.*, 492 U.S. at 241, 109 S.Ct. at 2902. We find that the Terrells have alleged behavior which arguably supports a finding of either a closed- or open-ended scheme. Because TSI no longer represents Walt Terrell, the plaintiffs have in some sense alleged a closed-ended scheme. The complaint sets forth a "series of related predicates extending over a substantial period of time." *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902. Defendants' various actions in furtherance of the alleged scheme to defraud the Terrells took place over an eight year period, clearly satisfying the "substantial period of time" requirement. Furthermore, contrary to defendants' assertions, the fact that TSI no longer represents Walt Terrell is not fatal to plaintiffs' RICO claim. Indeed, the very nature of a *"closed*-ended scheme" is that it has, in fact, come to a close. We therefore find that the Terrells have adequately alleged such a scheme.

■ In addition, they have arguably set forth an open-ended scheme. This type of RICO claim hinges upon a showing that the scheme demonstrates "a specific threat of repetition extending indefinitely into the future," or that the offenses involved "are part of an ongoing entity's regular way of doing business." *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902. Here, the complaint sets forth two other lawsuits in which TSI and John Childers are defendants, and both of which involve those defendants providing allegedly fraudulent investment advice to professional athletes. This type of allegation, evidencing similar schemes directed against multiple similar victims, is sufficient to support an allegation of continuity.[6] *See, e.g., Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986) (multiple victims factor supporting RICO claim).

We are cognizant of the rarity with which civil RICO claims based upon business fraud are successful. *See Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir.1992). Nonetheless, given the deference owed plaintiffs' complaint at the motion to dismiss stage, we find that plaintiffs have adequately alleged the basis of a RICO claim. We, of course, do not hold that defendants actually engaged in racketeering activity, or committed the alleged predicate acts; we simply conclude that the allegations, as set forth, arguably support that conclusion. Accordingly, we deny defendants' motion to dismiss.

### IV.   Conclusion

For the reasons set forth above, we deny defendants' motion to dismiss. In addition, we grant plaintiffs leave to amend their complaint to remedy the internally inconsistent prayer for relief. It is so ordered.

6. Defendants' efforts to distinguish these other lawsuits are unpersuasive. Indeed, in one, the court, after a bench trial, expressly found "a clear pattern," concluding that Childers courted athletes as clients, and then "discarded them" and failed to assist with their business advice once their careers had begun to wane. *Jones v. Childers*, No. 88–85–CIV–T–22C, 1992 WL 300845 at *2 (M.D.Fla.1992).

With respect to the other lawsuit, defendants argue that there was a pending motion for reconsideration of the denial of their motion for summary judgment. Since defendants filed their final brief in support of the present motion, however, Judge Norgle has denied their motion for reconsideration. *See Hernandez v. Childers*, No. 89 C 1418 (N.D.Ill. July 20, 1993).