**CREDIT GENERAL INSURANCE, COMPANY, Plaintiff,**

v.

**MIDWEST INDEMNITY CORPORA- TION; and Viceroy Manage- ment, Inc., Defendants.**

**MIDWEST INDEMNITY CORPORATION, Third– Party Plaintiff,**

v.

**ANDERSON, McPHARLIN & CONNERS, a California Partnership; G. Wayne Murphy, an individual; and Larry E. Robinson, Third–Party Defendants.**

**ANDERSON, McPHARLIN & CONNERS, a California Partnership; G. Wayne Murphy; and Larry E. Robinson, Cross– Plaintiffs,**

v.

**VICEROY MANAGEMENT, INC., Cross–Defendant.**

No. 90 C 7151.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 31, 1996.

Terrence P. Canade, Nick J. DiGiovanni, Lord, Bissell & Brook, Chicago, IL, for plaintiffs.

James M. Witz, Katten, Muchin & Zavis, Chicago, IL, Raymond E. Stachnik, Connelly & Schroeder, Chicago, IL, for defendants.

## ORDER

ANN CLAIRE WILLIAMS, District Judge.

The court has carefully reviewed Magistrate Judge Ashman's Report and Recommendation ("R & R"). Finding Judge Ashman's analysis thorough and persuasive, the court adopts the R & R in its entirety. The Court grants in part and denies in part Viceroy's Motion to Dismiss and Strike the AMC Defendant's Cross–Claim by dismissing Counts II and IV of the cross-claim and striking all reference to bad faith in the remainder of the cross-claim. The court denies Viceroy's Motion to Dismiss and Strike Counts VII and VIII of Credit General's Amended Complaint. The court has considered the objections to the R & R offered by the AMC Defendants, which raise relatively minor factual disputes but do not challenge the final recommendations of Magistrate Judge Ashman. Finding that a ruling on these objections would not affect the ultimate disposition of the motions now at issue, the court overrules the objections as moot with leave to reinstate them at a later stage of the litigation, should they become relevant. The court notes for the record apart from the AMC defendants, who filed the objections discussed above, none of the other parties filed objections to the R & R by Magistrate Judge Ashman.

## REPORT AND RECOMMENDATION

ASHMAN, United States Magistrate Judge.

Pending before this Court are three motions brought by Defendant/Cross–Defendant, Viceroy Management, Inc. ("Viceroy"): (1) Viceroy's Rule 12(g) Consolidated Motion to Dismiss and Strike Third–Party Defendants/Cross–Plaintiffs', Anderson, McPharlin & Conners and Larry Robinson ("collectively referred to as "the AMC Defendants"), four-count cross claim; (2) Viceroy's Consolidated Rule 12(g) Motion to Dismiss and Strike Counts VII and VIII of Plaintiff, Credit General Insurance Company's ("Credit General"), First Amended Complaint; and (3) Viceroy's Rule 56 Motion for Summary Judgment as to Credit General's Counts VII and VIII.

This case commenced on December 11, 1990, when Credit General filed suit against Defendant/Third–Party Plaintiff, Midwest Indemnity Corporation ("Midwest"), for damages related to a claim made on a surety bond issued by Midwest, in the name of Indiana Lumbermen's Mutual Insurance Company ("Indiana"), pursuant to a Limited General Agency Agreement ("LGAA") between Credit General and Midwest. Credit General subsequently amended its complaint on January 20, 1995 to add two counts against Viceroy, the claims administrator. On January 14, 1994, Midwest filed its Third–Party Complaint against the AMC Defendants seeking damages, to the extent Midwest is found liable to Credit General, on a theory of legal malpractice. In turn, on March 17, 1995, the AMC Defendants filed a four-count cross claim against Viceroy for contribution and indemnity, seeking damages to the extent it is found liable to Midwest and seeking damages incurred in the settlement of a legal malpractice suit brought by Indiana. All materials and briefs on these motions were submitted by November 15, 1995 and oral argument was held on December 1, 1995.

### I. *Relevant Background*

As gleaned from previous Orders and the parties' pleadings and arguments, the following is a brief summary of the extensive background of this case.

On April 15, 1984, Credit General, an Ohio-based insurance company, entered into an LGAA with Midwest, an Illinois corporation engaged in the business of underwriting and selling large surety bonds. The LGAA authorized Midwest to solicit, underwrite and issue contracts of suretyship on behalf of Credit General. In addition, under the LGAA, Midwest agreed to indemnify Credit General for any losses or expenses associated with these bonds resulting from negligent or intentional acts, errors or omissions by Midwest, excluding any losses caused by Credit General's own misconduct.

In mid–1985, Midwest became a general agent with authority to solicit, underwrite and issue surety bonds for Indiana, an Indiana-based insurance company. Subsequently, Credit General and Indiana entered into a Quota Share Reinsurance Agreement, commonly known as a fronting agreement. Pursuant to this Agreement, Indiana agreed to be bound to surety bonds issued by Midwest to Credit General customers. While Indiana was committed to satisfy any claims arising from these bonds, the fronting agreement provided that Credit General would indemnify and hold Indiana harmless from any losses and expenses related to the issuance of these bonds.

On August 20, 1986, Midwest issued a bond, later amended in December, 1986, which bound Indiana to a subcontractor's performance and payment bond totalling $1,125,000 guaranteeing the contractual performance of W.S. Lee Construction Company ("W.S. Lee") in favor of Jones Brothers Construction Company ("Jones Bros.") related to a hotel construction project in California. Under the fronting agreement, Credit General indemnified Indiana from any losses associated with this bond.

Sometime in 1987, W.S. Lee failed to fulfill its contractual obligations, thus stimulating a chain of litigation. Jones Bros. brought suit in California in 1988 against Indiana seeking to enforce the surety bond, and also seeking damages for alleged bad faith in handling of the claims. Credit General, being the ultimate obligor, directed the litigation for Indiana and retained the AMC Defendants, a California law firm, as counsel. As alleged in Midwest's Third–Party Complaint against the AMC Defendants, Credit General informed the AMC Defendants upon their retention that it, Credit General, was contractually bound to indemnify Indiana for all costs and expenses awarded in the Jones Bros. litigation and that Credit General expected Midwest to indemnify it for any sums

that Credit General was required to pay as a result of the litigation.

On September 6, 1991, judgment in favor of Jones Bros. was entered on a jury's special verdict. In the special verdict, the jury found that Indiana committed bad faith and was guilty of oppression, fraud or malice in its dealings with Jones Bros. The jury awarded contract damages of $1,167,644.16, consequential damages of $1,000,000, and punitive damages of $2,500,000 plus attorney's fees, interest, costs and expenses. On October 3, 1991, the litigating parties reached a settlement whereby Indiana agreed to pay $3,650,000 and Jones Bros. agreed to release all claims and dismiss its suit.[1] The Settlement Agreement was memorialized in a Court Order dated October 31, 1991, which vacated the September 6, 1991 judgment, rendered the judgment (and the subsequently filed appeal) moot by settlement, found the judgment no longer equitable and just such that it should not have prospective preclusive effect, and denied the judgment any prospective preclusive effect. Thereafter, Indiana brought suit in California against the AMC Defendants alleging the AMC Defendants' legal malpractice. This suit was settled in July 1994 by the payment of an unspecified amount of money by the AMC Defendants to Indiana.

## II. *Discussion*

The Court will first address Viceroy's Consolidated Motions to Dismiss and Strike the AMC Defendants' Cross-claim and Credit General's Complaint and then consider Viceroy's Motion for Summary Judgment against Credit General.

### A. *Standard of Review—Rule 12 Motions*

Viceroy challenges the sufficiency of the AMC Defendants' and Credit General's complaints in its Rule 12(g) Consolidated Motion[2] by seeking to have the respective com-

---

1. *See* October 3, 1991 Order of Honorable Consuelo B. Marshall, U.S. District Judge for the Northern District of California, in Case No. 88–04812 CBM (KX).

2. Fed.R.Civ.P. 12(g) directs:

**(g) Consolidation of Defenses in Motion.** A party who makes a motion under this rule may join with it any other motions herein provided for an then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be

plaints dismissed under Rule 12(b)(6) [3] and/or seeking to have portions of the complaints stricken pursuant to Rule 12(f).[4]

When considering a motion to dismiss or a motion to strike, the Court must consider the allegations in the complaint to be true and view them, along with reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. A complaint should be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff is unable to prove any set of facts that would entitle him to relief. While the plaintiff need not set out in detail all the facts upon which the claim is based, he must allege sufficient facts to outline a cause of action. *Doe v. St. Joseph's Hosp. of Ft. Wayne*, 788 F.2d 411, 414 (7th Cir.1986).

Motions to strike under Rule 12(f) are generally infrequently granted. 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1380 (1990). A motion to strike must state with particularity the grounds therefor and set forth the nature of relief or type of orders sought. In moving to strike matters as irrelevant, the movants must clearly show that the matter is outside the issues in the case and is prejudicial. 5A WRIGHT & MILLER, § 1380. Typically, unnecessary evidentiary details in a pleading will not be stricken especially if inconsequential or non-prejudicial or if they might assist the Court or litigants in better understanding the issues. 5A WRIGHT & MILLER, § 1383. The granting of a motion to strike is within the discretion of the Court. 5A WRIGHT & MILLER, § 1380.

### 1. Viceroy's Motion To Dismiss The AMC Defendants' Cross Claim

In their cross claim, the AMC Defendants seek contribution and indemnification for damages to the extent the AMC Defen-

dants are held liable to Midwest (Counts I and II) and for damages related to the settlement of the legal malpractice suit brought by Indiana in California (Counts III and IV).

The Court will first address Viceroy's motion as to Counts II and IV, the indemnification claims. Indemnity is defined as:

a contractual or equitable right under which the entire loss is shifted from a tortfeasor who is only technically or passively at fault to another who is primarily or actively responsible.

BLACK'S LAW DICTIONARY, SIXTH ED., p. 707. In both Counts II and IV, the AMC Defendants assert a contractual basis for their indemnification. Specifically, the AMC Defendants allege the existence of the LGAA between Credit General and Midwest (Cross-Claim, ¶ 6), and a services agreement between Midwest and Viceroy (Cross-Claim, ¶ 8). For the following reasons, the Court finds that neither count states a claim for indemnity.

In Count II, the AMC Defendants allege that they were "intended beneficiaries of the adjusting services contracted between Viceroy, Credit General or Midwest", and that it was foreseeable that any negligence by Viceroy would harm them. (Cross-Claim, Count II, ¶ 18). In other words, the AMC Defendants seek indemnity as third-party beneficiaries.

Illinois law is well settled that a third person not a party to a contract may sue for breach of that contract only if the parties to the contract entered into it for the direct benefit of that third person. If the benefit arising from the contract is direct to the third person, he may sue; whereas, if the benefit is merely incidental, he has no right of recovery on the contract. *Terrell v. Childers*, 836 F.Supp. 468, 473 (N.D.Ill.1993), quot-

---

raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

**3.** FED.R.CIV.P. 12(b)(6) provides in pertinent part:
 **(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, ... shall be asserted in the responsive pleading thereto if one is required, except that the fol-

lowing defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted, ...

**4.** FED.R.CIV.P. 12(f) directs in pertinent part:
 **(f) Motion to Strike.** Upon motion made by a party before responding to a pleading ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

ing as "the seminal authority on third-party beneficiaries in Illinois", *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 178 N.E. 498 (1931). A contract need not expressly name a third-party beneficiary; and, in determining the benefit of a contract, the Court must examine the intention of the parties as gleaned from a consideration of the entire contract and the circumstances surrounding the parties at the time of its execution. *Terrell*, 836 F.Supp. at 473.

Two critical factual allegations are absent from Count II. First, the AMC Defendants do not allege the terms of either contract to which they claim a benefit, nor do they attach either contract to their cross claim. Without the terms of the contracts, this Court cannot, and no finder of fact could, determine the intent of the parties to those contracts. Second, the AMC Defendants allege no circumstances in which the contracts were executed nor any relationships between the contracting parties which supports a finding that they were intended beneficiaries of either contract.

The AMC Defendants lamely assert that the parties knew that, if they were sued on a surety claim, a law firm would be retained which would rely on Viceroy's adjusting services. Using that argument, attorneys are third-party beneficiaries of almost any contract, since attorneys would be retained in the event of breach and would rely on representations made by the parties or the parties' agent. This argument is preposterous. Further, as alleged in the cross-claim, both contracts were entered into before the AMC Defendants were ever retained, and there is no allegation that the parties knew of or contemplated any lawsuits at the time these contracts were executed. In short, there is nothing in either indemnity claim which supports a finding that the AMC Defendants were intended to be direct beneficiaries of any contract between Credit General, Midwest and/or Viceroy. Therefore, the AMC Defendants indemnity claim, in Count II, must be stricken and dismissed for failure to state a claim.

■ In Count IV, the AMC Defendants allege that they were damaged by Viceroy's breach of the LGAA with Credit General.

(Cross–Claim, Count IV, ¶¶ 23–26). Two fundamental flaws doom this claim. First, it is internally inconsistent. After initially alleging the LGAA was between Credit General and Midwest (Cross–Claim, ¶ 6, incorporated by reference into Count IV), the AMC Defendants allege that Viceroy breached the LGAA with Credit General. The AMC Defendants do not provide caselaw to support a finding that a non-party to a contract can breach that contract. In fact, such a claim is ludicrous.

Second, assuming *arguendo* that the AMC Defendants really meant to plead a claim as third-party beneficiary to the LGAA, that claim also fails for the same reasons that Count II fails to state a claim. Namely, the AMC Defendants do not allege the terms of the LGAA nor do they allege facts which show a relationship between the contracting parties that supports a finding that Credit General and Midwest knew or contemplated any lawsuits at the time the LGAA was executed. Further, there are no facts to support a finding that either Credit General or Midwest even knew of the AMC Defendants' existence, much less intended them as direct beneficiaries of their contract.

For these reasons, the Court finds that the AMC Defendants fail to state claims upon which indemnity could be awarded. Therefore, the Court recommends that Counts II and IV be dismissed.

■ In Counts I and III, the AMC Defendants seek contribution for certain damages on a tort theory of negligent misrepresentation. In cases, such as this, where plaintiffs allege only pecuniary losses and seek only economic damages, the Courts have adopted a restricted rule of liability. *Board of Educ. of City of Chicago v. A, C and S, Inc.*, 131 Ill.2d 428, 452, 137 Ill.Dec. 635, 646, 546 N.E.2d 580, 591 (1989). To state a cause of action for negligent misrepresentation, a plaintiff must plead and prove:

1. a false statement of material fact,

2. carelessness or negligence in ascertaining the truth of the statement by the defendant,

3. an intention to induce the other party to act,

4. action by the other party in reliance on the truth of the statements,

5. damage to the other party resulting from such reliance, and

6. a duty owed by defendant to plaintiff to communicate accurate information.

*Rosenstein v. Standard & Poor's Corp.*, 264 Ill.App.3d 818, 819, 201 Ill.Dec. 233, 234, 636 N.E.2d 665, 666 (1st Dist.1993).

■ The tort of negligent misrepresentation traces its creation to the Illinois Supreme Court holding in *Rozny v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656 (1969), where the Court recognized a cause of action against a defendant who negligently supplies inaccurate information to one who relies upon such information if it was foreseeable that such information would be used by and relied upon by others not in privity with the defendant and where the potential liability was restricted to a comparatively small group. Subsequently, in the well-known *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), the Illinois Supreme Court held that disappointed commercial expectations should be redressed in an action sounding in contract rather than tort. However, the Court recognized an exception to that rule in actions for fraudulent or negligent misrepresentation against one who is in the business of supplying information for the guidance of others in their business transactions. *Moorman*, 91 Ill.2d at 88–89, 61 Ill.Dec. at 754–55, 435 N.E.2d at 451–52. In light of *Moorman*, the focus in such litigation becomes whether one is in the business of supplying information for the guidance of others or whether the information supplied was merely ancillary to or connected to the sale of merchandise or another matter. *Rosenstein*, 264 Ill.App.3d

at 823, 201 Ill.Dec. at 234, 636 N.E.2d at 667. Therefore, the facts of each case must be examined to determine if the *Moorman* exception applies.

■ In this case, the facts as alleged are that Viceroy was in the business of administering and adjusting claims on surety bonds such as the W.S. Lee bond. This service involves collecting, analyzing and providing information to the insurer. Such information impacts on the insurer's ultimate decision whether to pay out the claim. These allegations easily support a finding that Viceroy was in the business of supplying information.

In this case, the insurer, Indiana, decided not to pay out the claim and Jones Bros. brought suit to recover on the bond alleging improper claims administration and adjustment. Just as Indiana relied upon information gathered and presented by Viceroy in making its decision, so, too, the AMC Defendants used and relied on that same information in mounting a defense in the Jones Bros. litigation. Under these circumstances, the Court finds that the AMC Defendants have alleged facts which support a finding that Viceroy owed them a duty, and breached that duty, to provide accurate information regarding the W.S. Lee claim. For these reasons, Count I should survive Viceroy's Rule 12(b)(6) motion to dismiss.[5]

In Count III, the AMC Defendants present the same allegations of negligence against Viceroy as in Count I but they seek contribution for damages incurred in the settlement of a legal malpractice lawsuit brought by Indiana. As discussed above, under the facts alleged, if proven, Viceroy could be found to owe a duty to provide information to third parties such as the AMC Defendants which guided them in business transactions including the settlement with Indiana.

---

5. Viceroy insists that a necessary element in negligent misrepresentation is the allegation that claimant lacked the opportunity or the resources to inquire into the accuracy of the information. Viceroy cites the holding in *Continental Leavitt Communications, Ltd. v. PaineWebber, Inc.*, 857 F.Supp. 1266 (N.D.Ill.1994). However, Viceroy's reliance is misplaced because in *Continental Leavitt* the court was considering the issue of reasonable reliance in the context of a motion for summary judgment. At the present stage, Viceroy attacks the sufficiency of the count to state a claim, and, therefore, all well-pleaded facts must be taken as true. The AMC Defendants do allege reliance, and that is sufficient to defeat Viceroy's argument, at this stage. Thus, the intriguing question of whether or how a lay person can contribute to attorney malpractice must await another day.

For these reasons, Viceroy's motion to dismiss Counts I and III should be denied.

Viceroy alternatively argues that Counts I and III are time barred.[6] Specifically, Viceroy alleges that Count I is untimely and that Count III fails for not being brought during the underlying litigation.

▆▆▆ In Count I, the AMC Defendants seek contribution for damages that may be assessed against them in the pending third-party suit between Midwest and the AMC Defendants. Illinois courts have held that where an underlying direct action is pending, an action for contribution by a joint tortfeasor is subject to the same statute of limitations applicable to the original claimant's cause of action in the underlying direct action. *Caballero v. Rockford Punch Press & Mfg. Co., Inc.*, 244 Ill.App.3d 333, 185 Ill.Dec. 228, 614 N.E.2d 362 (1st Dist.1993). In this case, the underlying action and the suit for contribution concern different theories of negligence, each of which is subject to a different limitation period. The underlying action was for legal malpractice which is subject to the two-year statute of limitations provided in 735 ILCS § 5/13–214.3;[7] while the contribution action is based on a theory of negligent misrepresentation which is subject to the five-year statute of limitations provided in 735 ILCS § 5/13–205.[8]

Under either standard, Count I, filed on March 16, 1995, is timely. Under the *Caballero* holding, whereby a contribution action is subject to the same statute of limitations as the underlying suit, the contribution claim set forth in Count I would be subject to the two-year statute of limitations provided for legal malpractice actions. Count I was filed 18 months after the January 14, 1994 filing of Midwest's Third–Party Complaint, well within the two-year limitation. If we disregard the *Caballero* holding since the

contribution action is based on negligent misrepresentation instead of legal malpractice, the applicable statute of limitations is five years. The Court finds that the earliest that the AMC Defendants could have brought an action for negligent misrepresentation against Viceroy would have been after the Jones Bros. lawsuit was settled, in October 1991. Count I was filed within four years of this settlement and is, therefore, timely filed. For these reasons, the Court finds that Viceroy's statute of limitations argument fails as to Count I.

▆▆▆ As for Count III, the AMC Defendants seek damages related to the settlement in July 1994 of a legal malpractice suit brought by Indiana. Viceroy relies on an Illinois Supreme Court holding that a party's failure to assert a claim for contribution during the pendency of the original negligence action barred a later-brought suit for contribution. *Laue v. Leifheit*, 105 Ill.2d 191, 85 Ill.Dec. 340, 473 N.E.2d 939 (1984). However, Viceroy's reliance on *Laue* is misplaced as the Illinois Joint Tortfeasor Act was amended *effective March 9, 1995* and directs:

> Other than in actions for healing art malpractice, a cause of action for contribution among joint tortfeasors is not required to be asserted during the pendency of litigation brought by a claimant and may be asserted by a separate action before or after payment of a settlement or judgment in favor of the claimant, or may be asserted by counterclaim or by third-party complaint in a pending action.

This amendatory Act of 1995 applies to causes of action filed on or after its effective date.

740 ILCS § 100/5 (1995). The AMC Defendants' claim was filed on March 16, 1995; therefore, the pertinent statute then in effect allowed for the filing of contribution claims in

---

6. The Court notes that based on the Reply and Oral Argument, Viceroy appears to have abandoned this argument. However, the Court will address the issue of timeliness for the sake of completeness.

7. 735 ILCS § 5/13–214.3 provides in pertinent part:
 (b) An action for damages based on tort, contract, or otherwise (i) against an attorney

arising out of an act or omission in the performance of professional services or (ii) . . .

8. 735 ILCS § 5/13–205 provides in pertinent part:
 . . . all civil actions not otherwise provided for, shall be commenced within 5 years after the cause of action accrued.

separate actions even if not filed during the pendency of the underlying litigation. Further, since the AMC Defendants filed Count III in March 1995, that was clearly within two years of their payment to Indiana as required under 735 ILCS § 5/13–204.[9]

### 2. Viceroy's Motion To Strike Certain Portions Of The AMC Defendants' Claims

 Viceroy seeks to have paragraph 21 of Count I and paragraph 23 of Count II stricken as "immaterial, impertinent and scandalous matter."[10] Viceroy argues that since the AMC Defendants have admitted they are not seeking recovery on a theory of a tort of bad faith, any reference to bad faith should be excised from the Complaint. The AMC Defendants counter that bad faith merely identifies the damages associated with the Jones Bros. litigation. Viceroy argues that without the references to bad faith, the *ad damnum* clauses of both Count I and II fail and should be stricken. For the following reasons, the court recommends granting, in part, Viceroy's Motion to Strike.

The Court finds two reasons to strike the reference to bad faith in Counts I and II. First, the Court notes that the Jones Bros. judgment was vacated by the subsequent settlement agreement between Jones Bros. and Indiana. As the judgment therefore has no preclusive effect and is in effect nonexistent, the Court finds that reference to the bad faith damages granted in that judgment is both immaterial and irrelevant. Second, the phrase 'bad faith' is more that just a descriptive label;[11] it is a legal term of art, a type of tort. As such, it should not be ban-

died about recklessly in this Complaint because its tendency here is to confuse and mislead. The use of the term bad faith has a potentially prejudicial effect on Viceroy and only serves to muddy the true issues in the cross-claim. The damages the AMC Defendants seek are adequately pleaded without labelling them as "bad faith damages." For these reasons, the reference to bad faith should be stricken from paragraph 21 of Count I and paragraph 23 of Count II. The Court does not find that this deletion affects the *ad damnum* clause of either count.

### 3. Viceroy's Motion To Dismiss Counts VII And VIII Of Credit General's First Amended Complaint

In Count VII, Credit General alleges that Viceroy breached a duty to Credit General based on Viceroy's administration and adjustment of the W.S. Lee claim. In Count VIII, Credit General alleges the same negligent acts against Viceroy as in Count VII but seeks indemnity in the event Credit General is not successful in its suit against Midwest. Viceroy contends that both counts fail to state cognizable claims and should be dismissed under FED.R.CIV.P. 12(b)(6). For the following reasons the Court recommends denying Viceroy's motion as to Count VII and Count VIII.

 In Illinois, an agent owes a fiduciary duty to his principal. "A fiduciary duty is the duty of an agent to treat his principal with the utmost candor, rectitude, care, loyalty, and good faith—in fact to treat the principal as the agent would treat himself." *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992) (citing the RESTATEMENT (SECOND) OF

9. 735 ILCS § 5/13–204 directs:
 Contribution among tortfeasors. No action for contribution among joint tortfeasors shall be commenced with respect to any payment made in excess of a party's pro rata share more than 2 years after the party seeking contribution has made such payment towards discharge of his or her liability.

10. Paragraph 21 of Count I alleges in pertinent part:
 21. To the extent that the AMC Defendants are found liable to MIDWEST for any and all expenses and settlement payments in the W.S. Lee claim, the AMC Defendants seek, [sic] contribution from VICEROY for all amounts paid

which relate to claims of bad faith claims administration and adjustment of the W.S. Lee claim ...
 Paragraph 23 of Count II alleges in pertinent part:
 23. ... the AMC Defendants seek, [sic] recovery from VICEROY for all amounts paid which relate to claims of bad faith in the administration and adjustment of the W.S. Lee claim ...

11. In pleadings and argument, the AMC Defendants continually assert that they are not making claims for a tort of bad faith; but, that they categorize certain damages arising from the Jones Bros. litigation as bad faith damages for identification purposes only.

AGENCY § 13 and applying Illinois law). Further, Illinois courts have held that, unless otherwise agreed, a subagent, i.e. an agent of an agent, owes the principal the same duties as the agent. *Estergard, Eberhardt & Ackerman, Inc. v. Carragher,* 105 Ill.App.3d 816, 61 Ill.Dec. 588, 434 N.E.2d 1185 (4th Dist. 1982), citing with approval the RESTATEMENT (SECOND) OF AGENCY, § 428.[12]

██ The Court finds that, Credit General has sufficiently alleged facts that would support a finding that Viceroy as agent of Midwest owed Credit General, as Midwest's Principal, a fiduciary duty.

Specifically, Credit General alleges the existence of the LGAA between itself and Midwest under which Midwest became Credit General's agent to issue surety bonds. (First Amended Complaint, ¶ 84). Further, Credit General alleges that Viceroy and Midwest shared a close business relationship and that Midwest selected Viceroy to administer all claims arising from the LGAA surety bonds, including the W.S. Lee claim. (First Amended Complaint, ¶¶ 85–86). As a result of these agreements, Credit General alleges that Viceroy owed it a duty to administer and adjust surety bond claims, including the W.S. Lee claim, with reasonable skill and diligence. Finally, Credit General alleges that Viceroy breached this duty by failing to properly administer the W.S. Lee claim and that it suffered damages as the indemnitor of Indiana. (First Amended Complaint, ¶ 90). This Court finds that Credit General has sufficiently pleaded each and every necessary element, i.e. duty as subagent, breach of that duty and damages resulting from that breach, of a claim for breach of agency.

██ In Count VIII, Credit General alleges a purported claim for indemnity based on certain contractual agreements. Since Credit General does not allege a direct contractual relationship between itself and Viceroy, Credit General seeks indemnity as a third-party beneficiary. As discussed above in relation the AMC Defendants' indemnity claims, Illinois recognizes the concept of

third-party beneficiary only in cases where the contract sued upon is found to provide a direct benefit to the third party.

The Court finds that, as alleged, the relationship of Viceroy and Midwest concerns surety claims administration which was clearly intended to benefit Credit General. Specifically, Viceroy was chosen by Midwest to administer all claims arising from surety bonds associated with the LGAA including the W.S. Lee claim. Under these circumstances, these facts support a claim that Viceroy knew that Credit General was the ultimate obligor and intended its claims administration services to benefit Credit General. Therefore, the Court finds that Credit General has sufficiently pleaded a claim for indemnification in Count VIII. For these reasons, Count VII and Count VIII state claims and Viceroy's motions to dismiss should be denied.

### 4. Viceroy's Motion To Strike Portions Of Counts VII And VIII

As in its motion relative to the AMC Defendants, Viceroy seeks the deletion of all references to bad faith in both Counts VII and VIII. Credit General has wisely asserted no intent to seek relief on a theory of bad faith and this Court finds, as it did in Section II.A.2. (pgs. 16–18), that such references to bad faith are immaterial, irrelevant and prejudicial and should be stricken. As both counts are replete with extraneous references to bad faith, both counts should be stricken with leave to replead within 28 days.

### B. *Viceroy's Motion for Summary Judgment*

██ In its alternative to the motions to dismiss, Viceroy seeks summary judgment on both Count VII and VIII. Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

12. Section 428 of the RESTATEMENT (SECOND) OF AGENCY provides in relevant part:
 (1) Unless otherwise agreed, a subagent who knows of the existence of the ultimate principal owes him the duties owed by an agent to a principal, except the duties dependent upon the existence of a contract.

matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether summary judgment is appropriate, we must view the evidence, and draw all reasonable inferences from the evidence, in the light most favorable to the non-moving party. *Kennedy v. United States,* 965 F.2d 413, 417 (7th Cir.1992); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

In support of its motion, Viceroy submits the deposition testimony of Charles Winkelman ("Winkelman"), former claims specialist for Credit General, and David Riese ("Riese"), vice president for claims at Indiana. Based on this deposition evidence, Viceroy contends that no genuine issue of material fact exists, that Viceroy did not breach its duty to Credit General, and that it is entitled, therefore, to judgment as a matter of law. In response, Credit General argues that there are genuine issues of material fact which preclude summary judgment. Specifically, Credit General asserts that Viceroy relies solely on opinion testimony of lay witnesses which does not preclude the admission of counter evidence at trial.[13] For the following reasons, the Court finds that genuine issues of material fact exist and that Viceroy is not entitled to judgment as a matter of law.

First, Viceroy's sole basis for its motion is its argument that since Winkelman and Riese testified that they felt that Viceroy did a good job administering the W.S. Lee claim, Credit General's claim for breach of duty fails. However, it is clear that both witnesses testified as to their opinion.[14] While Winkelman's and Riese's testimony may provide some opinion on the issue of whether or not Viceroy breached its duty of care and skill to Credit General, federal courts have long held that a declaration by an officer or agent is generally only admissible if it is one of fact rather than a statement of opinion. *Lasiter v. Washington Nat. Ins. Co.,* 412 F.2d 594, 597 (5th Cir.1969). Further, even assuming that such opinion testimony were admissible, it would not provide conclusive evidence at the summary judgment stage since it would not preclude Credit General from offering additional evidence at trial to prove its claims. *See Wood v. Commonwealth Edison Co.,* 343 F.Supp. 1270, 1272 (N.D.Ill.1972).

A full reading of the Winkelman and Riese deposition transcripts shows that their testimony was couched as opinion rather than fact. This opinion cannot support a finding of summary judgment for Viceroy. Fundamentally, the issue of Viceroy's breach of duty are factual issues about which there remain material questions. For these reasons, Viceroy's Motion for Summary Judgment should be denied.

13. Credit General also has filed a Surreply touting the testimony of Stephen Henning ("Henning"), an attorney for AMC who apparently did post-trial interviews with the jury in the Jones Bros. suit. According to Henning's testimony and report, the jury did not like Viceroy's administration of the W.S. Lee claim. (Henning Dep., p. 128; Henning Report, p. 3, ¶ 13). While no motion to exclude has been brought by Viceroy, the Court finds that such evidence is at best opinion and at worst inadmissible hearsay as it is an attorney's conclusions based on interviews with jurors. The Court, therefore, rejects Credit General's arguments which are based on Henning's testimony or report.

14. Winkelman testified as follows in his August 18, 1992 deposition for the arbitration between Indiana and Credit General:
Q. Did Viceroy complete its initial investigation in a timely enough manner so as to permit surety to complete the project if that was the appropriate avenue?
A. * * *

So your question, I believe went to the speediness of Viceroy's investigation in regards to what surety needed to do so they could either decide to take over and complete the project or not, I would say under the circumstances that Viceroy's investigation was timely.
(Winkelman Dep., p. 207, lns. 13–16; p. 209, lns. 6–12).
Riese testified as follows at his February 5, 1991 deposition for the Jones Bros. lawsuit:
Q. Did you feel that Viceroy did an adequate investigation, based on what you read?
A. I have no quarrel with the investigation that Viceroy or anyone else conducted on this case.
Q. Do you think that Viceroy did a prompt, thorough investigation?
A. My opinion is yes.
(Riese Dep., p. 84, lns. 17–23).

### III. *Conclusion*

For the above reasons, the Court now recommends granting in part and denying in part Viceroy's Motion to Dismiss and Strike the AMC Defendants' Cross–Claim; denying Viceroy's Motion to Dismiss and Strike Counts VII and VIII of Credit General's Amended Complaint; and denying Viceroy's Motion for Summary Judgment against Credit General. Therefore, the Court recommends dismissing Counts II and IV of the AMC Defendants' cross-claim and striking all reference to bad faith in the cross-claim. The Court further recommends striking Counts VII and VIII with leave to replead within 28 days, without reference to bad faith.

**Dated:** December 29, 1995.